1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

9  | JOE KELLY ARMSTEAD,

10 |         Petitioner,                    Case No. 2:07-CV-01337-LRH-(PAL)

11 | vs.                                    **ORDER**

12 | DWIGHT NEVEN, et al.,

13 |         Respondents.

14

15     Before the court are the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254

16 (#1), respondents' answer (#23), and petitioner's reply (#24).  The court finds that petitioner is not

17 entitled to relief and denies the petition (#1).

18     In the Eighth Judicial District Court of the State of Nevada, petitioner was charged with the

19 murder of David Leal with the use of a deadly weapon.  Ex. 9 (#8-3, p. 26).[1]  His first trial ended in

20 a mistrial.  Ex. 17, p. 18 (#8-7, p. 7).  After his second trial, petitioner was convicted of second

21 degree murder with the use of a deadly weapon.  Ex. 42 (#9-4, p. 28).  Petitioner appealed, and the

22 Nevada Supreme Court affirmed.  Ex. 56 (#9-7, p. 22).

23     Petitioner then filed in state court a post-conviction habeas corpus petition.  Ex. 61 (#9-8, p.

24 3).  The district court denied the petition.  Ex. 68 (#9-10, p. 1).  Petitioner appealed, and the Nevada

25 Supreme Court affirmed.  Ex. 74 (#9-10, p. 21).

26
27
28

---

[1]Page numbers in parentheses refer to the images of the documents in the court's computer docket.

1    Petitioner then commenced this action.  Originally, the petition (#1) contained eight grounds.

2  The court dismissed (#2) grounds 1 and 4 because they were plainly without merit.  The court

3  dismissed (#15, #16) grounds 7 and 8 because petitioner had not exhausted his available state-court

4  remedies for those grounds.  Grounds 2, 3, 5, and 6 remain.

5    "A federal court may grant a state habeas petitioner relief for a claim that was adjudicated on

6  the merits in state court only if that adjudication 'resulted in a decision that was contrary to, or

7  involved an unreasonable application of, clearly established Federal law, as determined by the

8  Supreme Court of the United States,'" Mitchell v. Esparza, 540 U.S. 12, 15 (2003) (quoting 28

9  U.S.C. § 2254(d)(1)), or if the state-court adjudication "resulted in a decision that was based on an

10  unreasonable determination of the facts in light of the evidence presented in the State court

11  proceeding," 28 U.S.C. § 2254(d)(2).

12    A state court's decision is "contrary to" our clearly established law if it "applies a rule that
13    contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are
     materially indistinguishable from a decision of this Court and nevertheless arrives at a result
     different from our precedent." A state court's decision is not "contrary to . . . clearly
14    established Federal law" simply because the court did not cite our opinions.  We have held
     that a state court need not even be aware of our precedents, "so long as neither the reasoning
15    nor the result of the state-court decision contradicts them."

16  Id. at 15-16.  "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court

17  may not issue the writ simply because that court concludes in its independent judgment that the

18  relevant state-court decision applied clearly established federal law erroneously or incorrectly.

19  Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76

20  (2003) (internal quotations omitted).

21    [T]he range of reasonable judgment can depend in part on the nature of the relevant rule.   If
     a legal rule is specific, the range may be narrow.   Applications of the rule may be plainly
22    correct or incorrect.   Other rules are more general, and their meaning must emerge in
     application over the course of time.   Applying a general standard to a specific case can
23    demand a substantial element of judgment.   As a result, evaluating whether a rule
     application was unreasonable requires considering the rule's specificity.   The more general
24    the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

25  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

26    The petitioner bears the burden of proving by a preponderance of the evidence that he is

27  entitled to habeas relief.  Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

28

1    In ground 2, petitioner alleges that his counsel failed to prevent a violation of <u>Brady v.</u>

2    <u>Maryland</u>, 373 U.S. 83 (1963), which requires the prosecution to disclose to the defense potentially

3    exculpatory evidence.  Petitioner argues that the prosecution withheld the unsavory background of

4    the victim David Leal.  Petitioner further argues that if counsel had obtained the appropriate

5    discovery, then counsel would have conveyed that Leal was responsible for his own demise:  Leal

6    took petitioner's money by false pretenses and then reacted with violence when petitioner tried to

7    get his money back.

8    "[T]he right to counsel is the right to the effective assistance of counsel."  <u>McMann v.</u>

9    <u>Richardson</u>, 397 U.S. 759, 771 & n.14 (1970).  A petitioner claiming ineffective assistance of

10   counsel must demonstrate (1) that the defense attorney's representation "fell below an objective

11   standard of reasonableness," <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984), and (2) that the

12   attorney's deficient performance prejudiced the defendant such that "there is a reasonable

13   probability that, but for counsel's unprofessional errors, the result of the proceeding would have

14   been different," <u>id.</u> at 694.  "[T]here is no reason for a court deciding an ineffective assistance claim

15   to approach the inquiry in the same order or even to address both components of the inquiry if the

16   defendant makes an insufficient showing on one."  <u>Id.</u> at 697.

17   <u>Strickland</u> expressly declines to articulate specific guidelines for attorney performance

18   beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the

19   duty to advocate the defendant's cause, and the duty to communicate with the client over the course

20   of the prosecution.  466 U.S. at 688.  The Court avoided defining defense counsel's duties so

21   exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . .  Any

22   such set of rules would interfere with the constitutionally protected independence of counsel and

23   restrict the wide latitude counsel must have in making tactical decisions."  <u>Id.</u> at 688-89.

24   Review of an attorney's performance must be "highly deferential," and must adopt counsel's

25   perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight."

26   <u>Strickland</u>, 466 U.S. at 689.  A reviewing court must "indulge a strong presumption that counsel's

27   conduct falls within the wide range of reasonable professional assistance; that is, the defendant must

28

1  overcome the presumption that, under the circumstances, the challenged action 'might be considered

2  sound trial strategy.'"  Id. (citation omitted).

3      The Sixth Amendment does not guarantee effective counsel per se, but rather a fair

4  proceeding with a reliable outcome.  See Strickland, 466 U.S. at 691-92.  See also Jennings v.

5  Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002).  Consequently, a demonstration that counsel fell

6  below an objective standard of reasonableness alone is insufficient to warrant a finding of

7  ineffective assistance.  The petitioner must also show that the attorney's sub-par performance

8  prejudiced the defense.  Strickland, 466 U.S. at 691-92.  There must be a reasonable probability that,

9  but for the attorney's challenged conduct, the result of the proceeding in question would have been

10  different.  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence

11  in the outcome."  Id.

12      If a state court applies the principles of Strickland to a claim of ineffective assistance of

13  counsel in a proceeding before that court, the petitioner must show that the state court applied

14  Strickland in an objectively unreasonable manner to gain federal habeas corpus relief.  Woodford v.

15  Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

16      On this issue, the Nevada Supreme Court held:

17      Armstead also claimed that counsel was ineffective for failing to prevent a Brady violation.
   Apart from arguing generally that counsel should have sought evidence from the State
18      regarding the character of the victim, Armstead failed to allege any specific evidence that
   was withheld by the State.  The district court did not err, therefore by denying this claim.
19

20  Exhibit 74, p. 3 (#9-10, p. 24) (citations omitted).  "There are three components of a true Brady

21  violation:  The evidence at issue must be favorable to the accused, either because it is exculpatory,

22  or because it is impeaching; that evidence must have been suppressed by the State, either willfully

23  or inadvertently; and prejudice must have ensued."  Strickler v. Greene, 527 U.S. 263, 281-282

24  (1999).  As for prejudice, "the question is whether 'the favorable evidence could reasonably be

25  taken to put the whole case in such a different light as to undermine confidence in the verdict.'"

26  Strickler, 527 U.S. at 290 (quoting Kyles v. Whitley, 514 U.S. 419, 435 (1995)).

27      Counsel did not need to rely upon the prosecution disclosing evidence of Leal's character,

28  because petitioner had that evidence himself.  Detective Dan Long interviewed petitioner after the

-4-

1    killing of Leal.  Petitioner told Long about Leal's reputation of being a bad businessman.  Ex. 33, p.

2    41 (#9-1, p. 13).  Not only did petitioner possess the information that he claims the prosecution did

3    not disclose, but that information was presented to the jury.  Petitioner could have presented a more

4    detailed explanation of Leal's reputation by testifying, but he chose not to testify.  Ex. 33, p. 54 (#9-

5    1, p. 16).  The Nevada Supreme Court's decision was not an unreasonable application of Strickland,

6    Brady, or Strickler.  28 U.S.C. § 2254(d)(1).

7         Reasonable jurists would not find this conclusion to be debatable, and the court will not

8    issue a certificate of appealability on this ground.

9         In ground 3, petitioner claims that counsel should have investigated witnesses better,

10   because then counsel would have pointed out to the jury how their testimonies differed from their

11   statements to police.  The only witness whom petitioner names is April Dawn Register.  She gave

12   direct testimony at petitioner's first trial, at the end of the day.  Ex. 16, pp. 45-61 (#8-6, pp. 20-36).

13   She disappeared before she could be cross-examined the next day.  Ex 17, p. 5 (#8-7, p. 4).  The

14   court declared a mistrial.  Id., p. 18 (#8-7, p. 7).  Register did not testify at petitioner's second trial.

15   Given that she is the only witness named in this ground, counsel did not perform deficiently if he

16   failed to investigate her, and petitioner suffered no prejudice from the lack of that investigation,

17   because the second jury never heard her testimony.

18        On this issue, the Nevada Supreme Court held:

19        Armstead further claimed that counsel was ineffective for failing to investigate adequately.
          Apart from arguing generally that counsel should have thoroughly investigated the character
20        of the witnesses, Armstead failed to make specific factual allegations or show a reasonable
          probability that the outcome of the trial would have been different. Accordingly, the district
21        court did not err in denying this claim.

22   Exhibit 74, p. 3 (#9-10, p. 24).  Given that Petitioner named no witnesses that actually testified at

23   his trial, the Nevada Supreme Court's decision was a reasonable application of Strickland.  28

24   U.S.C. § 2254.

25        In the reply (#24), petitioner alleges that his investigator talked with the manager of the

26   trailer park, and that the manager stated that a white male shot Leal.  Petitioner argues that counsel

27   did not investigate that statement and did not present the testimony to the jury.  First, as a matter of

28   procedure, petitioner needed to allege this in his petition.  A reply brief is not the correct pleading in

1  which to present new facts.  Cacoperdo v. Demosthenes, 37 P.3d 504, 507 (9th Cir. 1994).  Second,

2  petitioner has not shown that counsel was deficient.  He provides no context about this statement.

3  Unless the manager witnessed the shooting himself, then his statement is inadmissible hearsay.

4  Reasonable jurists would not find this conclusion to be debatable, and the court will not

5  issue a certificate of appealability on this ground.

6  In ground 5, petitioner claims that the trial court committed misconduct by (a) eliciting

7  testimony on the direct examination of Daniel Poole that drug dealers were at the corner of the

8  trailer park, and (b) eliciting testimony on redirect examination of Daniel Poole that petitioner was

9  one of the individuals on the corner.  Ex. 32, pp. 111, 133 (#8-11, pp. 9, 15).  This, petitioner

10  argues, portrayed petitioner as a drug dealer and gave him a motive for murdering Leal because he

11  was trying to collect drug money from Leal.  Petitioner moved for a mistrial.  The court denied the

12  motion because it was not clear from the testimony that the corner where the drug dealers were was

13  the same corner where Mr. Poole saw petitioner.  Ex. 32, p. 143 (#8-11, p. 17).

14  "The relevant question is whether the prosecutors' comments so infected the trial with

15  unfairness as to make the resulting conviction a denial of due process."  Darden v. Wainwright, 477

16  U.S. 168, 181 (1986) (internal quotation omitted).  See also Donnelly v. DeChristoforo, 416 U.S.

17  637, 643 (1974).

18  On this issue, the Nevada Supreme Court held:

19  Armstead did not object to the prosecutor's questions.  The failure to object to prosecutorial
   misconduct below precludes appellate review unless the alleged misconduct constitutes plain
20  error and affected the defendant's substantial rights.  "Normally, the defendant must show
   that an error was prejudicial in order to establish that it affected substantial rights."  Given
21  the overwhelming evidence of his guilt, we conclude that Armstead failed to demonstrate
   that these exchanges were prejudicial beyond a reasonable doubt.
22

23  Exhibit 56, pp. 1-3 (#9-7, pp. 24-25) (citations omitted).  At trial, the jury was presented with the

24  following evidence:

25     1.     Two eyewitnesses testified that petitioner shot Leal in his trailer at a trailer
          park near the intersection of Las Vegas and Nellis Boulevards, and one testified that
26         he drove away in a c. 1990 Dodge Daytona. Ex. 32, pp. 75-83 (#8-10, p. 21, through
          #8-11, p. 2) (testimony of Jessica Poole); Ex. 32, pp. 114-121 (#8-11, pp. 10-12)
27         (testimony of Daniel Poole).

28

2..     Leal was shot at such close range that around the wound was stippling, which results from hot, incompletely burned gunpowder contacting the skin.  Ex. 33, pp. 3-7 (#9-1, p. 4).

3.      A trail of motor oil led to the driveway of Leal's trailer, motor oil was pooled in the driveway, a trail of motor oil led away from the driveway, and the oil was fresh.  Ex. 32, pp. 47-48 (#8-10, p. 14).

4.      Detective McGrath, responding to a request from a sergeant, went to the intersection of Las Vegas and Lake Mead Boulevards, about three miles from the trailer park, and found a parked car with oil dripping from its underside and pooling underneath it on the pavement.  Ex. 33, pp. 31-33 (#9-1, pp. 10-11).

5.      Detective McGrath could look inside the car, and he saw blood smeared on the armrest of the driver's door; Ex. 33, p. 34 (#9-1, p. 11).  He also saw empty oil cans in the car, and the hood was up.  Ex. 33, pp. 36-37 (#9-1, pp. 11-12).

6.      Detective Long noted that the car was a 1989 Dodge Daytona, and that it was towed from that intersection.  Ex. 33, p. 38 (#9-1, p. 12).

7.      Detective Long's search of the car revealed documents with petitioner's name on them.  Ex. 33, pp. 38-39 (#9-1, p. 12).

8.      Detective Long interviewed petitioner, and he noticed burn marks on petitioner's forearm.  Ex. 33, p. 43 (#9-1, p. 13).

9.      After the interview, the detective looked at photographs from Leal's autopsy and realized that the burn on petitioner's forearm was stippling identical to the stippling around Leal's wound.  Ex. 33, p. 44 (#9-1, p. 13).

10.     It took around a week for petitioner to be apprehended, and his burn had healed some, but photographs showed the pattern of the burn.  Ex. 33, pp. 46-47 (#9-1, p. 14).

With evidence like that, the prosecutor's improper question was comparatively minor.  The Nevada Supreme Court reasonably applied Darden and Donnelly.  28 U.S.C. § 2254(d)(1).

Reasonable jurists might find this conclusion to be debatable, and the court will issue a certificate of appealability for this ground.

In ground 6, petitioner argues that the trial court abused its discretion in denying his motion for mistrial based upon the prosecutor's improper questions that hinted that petitioner was a drug dealer.

The Nevada Supreme Court held:

Second, Armstead contends that the district court erred by denying his motion for a mistrial. Armstead claims that the testimony regarding drug dealers prevented the jury from reaching an impartial verdict.  The decision whether to grant or deny a motion for a mistrial is well within the district court's sound discretion and will not be disturbed absent a clear showing of an abuse of that discretion.  "'A trial judge properly exercises his discretion to declare a

-7-

1  mistrial if an impartial verdict cannot be reached.'"  Here, the district court denied the
   motion for a mistrial after finding that the evidence did not show "that the corner where the
2  bend was, which was where the drug dealers were, was one and the same as the corner where
   the defendant was."  As this finding is supported by substantial evidence and is not clearly
3  wrong, we conclude that Armstead has failed to demonstrate that the district court abused its
   discretion.
4

5  Ex. 56, p. 3 (#9-7, p. 25) (citations omitted).  Petitioner does not cite, and the court cannot find,

6  clearly established decisions by the Supreme Court of the United States that the Constitution

7  requires a state trial court to grant a motion for mistrial in certain circumstances.  The case that

8  Petitioner does cite is inapposite.  In Illinois v. Somerville, 410 U.S. 458, 464 (1973), the issue was

9  whether a trial court's exercise of its discretion to declare a mistrial based upon a faulty indictment

10  barred retrial pursuant to the Double Jeopardy Clause of the Fifth Amendment.  The Supreme Court

11  of the United States held that a trial judge could exercise his discretion to declare a mistrial if it was

12  obvious that the jury could not reach an impartial verdict or, if a verdict could be reached, the case

13  would be reversed on direct appeal because of a procedural error.  Id. at 464.  Somerville says

14  nothing about whether the Constitution requires a trial court to grant a motion for a mistrial.  Indeed,

15  the Supreme Court of the United States recognizes that a ruling on a motion for a mistrial is

16  committed to the sound discretion of a trial court.  "[T]he overriding interest in the evenhanded

17  administration of justice requires that we accord the highest degree of respect to the trial judge's

18  evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the

19  improper comment."  Arizona v. Washington, 434 U.S. 497, 511 (1978).  For this court, the issue

20  then becomes whether the decision to deny the motion for a mistrial made the trial fundamentally

21  unfair.  See Estelle v. McGuire, 502 U.S. 62, 67-68, 75 (1991).  As noted above with respect to

22  ground 5, the Nevada Supreme Court reasonably determined that the prosecutor's questions did not

23  make the trial fundamentally unfair because of the overwhelming evidence against petitioner.

24  Consequently, the decision of the district court to deny the motion for a mistrial also did not make

25  the trial fundamentally unfair, and the Nevada Supreme Court's ruling on this ground was a

26  reasonable application of McGuire.  28 U.S.C. § 2254(d)(1).

27      Reasonable jurists might find this conclusion to be debatable, and the court will issue a

28  certificate of appealability for this ground.

1    The court will not issue a certificate of appealability for the two grounds that it dismissed

2    before directing respondents to respond to the petition (#1).  Ground 1 was a claim that counsel

3    provided ineffective assistance because counsel did not raise a double-jeopardy challenge to

4    Nevada's deadly-weapon enhancement statute, Nev. Rev. Stat. § 193.165.  The case law is clear that

5    an equal and consecutive sentence for use of a deadly weapon does not violate the Double Jeopardy

6    Clause.  Order, pp. 1-2 (#2).  Ground 4 was a claim that counsel provided ineffective assistance

7    because counsel did not raise a due-process claim that the deadly-weapon enhancement relied upon

8    facts not found by a jury.  The record was clear that the jury did find that petitioner used a deadly

9    weapon, and the record also is clear that the judge imposed a sentence that was authorized by the

10   statutes governing second degree murder and the use of a deadly weapon.  Order, p. 2 (#2).

11   Consequently, counsel did not provide ineffective assistance by not raising these claims.

12   Reasonable jurists would not find these conclusions to be debatable.

13   The court will not issue a certificate of appealability regarding its ruling that grounds 7 and 8

14   were unexhausted.  The record is clear that in state court petitioner presented the claim contained in

15   ground 7, regarding the language used in the jury instructions that define malice, as a matter of state

16   law.  Petitioner agreed that he did not exhaust ground 8 in the state courts.  Reasonable jurists would

17   not find these conclusions to be debatable.

18   IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus pursuant to 28

19   U.S.C. § 2254 (#1) is **DENIED**.

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

IT IS FURTHER ORDERED that a certificate of appealability is **GRANTED** on the following issues:

    1.    Whether this court was correct in its ruling that the Nevada Supreme Court reasonably applied clearly established federal law, as defined by the Supreme Court of the United States, when the Nevada Supreme Court ruled that the prosecutor's improper questions were not prejudicial given the overwhelming evidence of petitioner's guilt;

    2.    Whether this court was correct in its ruling that the Nevada Supreme Court reasonably applied clearly established federal law, as defined by the Supreme Court of the United States, when the Nevada Supreme Court ruled that the trial court did not abuse its discretion in denying petitioner's motion for a mistrial regarding the prosecutor's improper questions.

DATED THIS 11th day of May, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

-10-